ORAL ARGUMENT NOT YET SCHEDULED

# No. 13-5064

─────────────────

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

─────────────────

**AMERICAN CIVIL LIBERTIES UNION,** *et al.,*

*Plaintiffs-Appellants,*

v.

**DEPARTMENT OF JUSTICE,**

*Defendant-Appellee.*

─────────────────

On Appeal from the
United States District Court
for the District of Columbia
No. 1:08-cv-1157 (ABJ)

─────────────────

# BRIEF FOR APPELLANTS

─────────────────

Arthur B. Spitzer
American Civil Liberties Union
  of the Nation's Capital
4301 Connecticut Ave, N.W., Suite 434
Washington, DC 20008
(202) 457-0800

Catherine Crump
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

David L. Sobel
Electronic Frontier Foundation
1818 N Street, N.W., Suite 410
Washington, DC 20036
(415) 436-9333 ext. 202

September 4, 2013                    *Counsel for Plaintiffs-Appellants*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES
## CORPORATE DISCLOSURE STATEMENT

### A.  Parties

The appellants (Plaintiffs below) are the American Civil Liberties Union and the American Civil Liberties Union Foundation.

The appellee (Defendant below) is the United States Department of Justice.

No briefs of *amici curiae* were filed in the district court and none are anticipated in this Court.

### B.  Ruling Under Review

The ruling under review is the district court's opinion and order of February 15, 2013 (Amy Berman Jackson, J.), granting Defendant's motion for summary judgment and denying Plaintiffs' motion for summary judgment.  The opinion is reported as *American Civil Liberties Union v. U.S. Dep't of Justice*, 923 F. Supp. 2d 310 (D.D.C. 2013).

### C.  Related Cases

This case has previously been before this Court on appeal from an earlier final judgment of the district court as appeal no. 10-5159; the decision of this Court is reported as *American Civil Liberties Union v. U.S. Dep't. of Justice*, 655 F.3d 1 (D.C. Cir. 2011) (Garland, Ginsburg &

i

Williams, JJ.).  Counsel for appellants are not aware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

### D.  Corporate Disclosure Statement

Appellants are nonprofit corporations that do not issue stock.  Neither appellant has a parent company, nor does any publicly held company have any ownership interest in either of the appellants.

*/s/ Arthur B. Spitzer*

Arthur B. Spitzer
*Counsel for Appellants*

September 4, 2013

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................iv

GLOSSARY ........................................................................vii

JURISDICTIONAL STATEMENT ............................................1

ISSUES PRESENTED ...........................................................2

PERTINENT STATUTORY PROVISIONS ..............................3

STATEMENT OF THE CASE .................................................4

STATEMENT OF FACTS .....................................................10

    A.  Facts about cell-phone tracking ......................................10

    B.  Facts about the prosecutions at issue ..............................16

SUMMARY OF ARGUMENT .................................................19

ARGUMENT ......................................................................21

  I.   The District Court Erred in Denying Plaintiffs' Motion for
      Summary Judgment Because the Fact of a Public Criminal
      Prosecution is Not an Invasion of Privacy ......................21

    A.  A person's privacy interest in the fact that he or she
        was publicly indicted in federal court is minimal.....................22

    B.  The public interest in information about cases ending
        in dismissal or acquittal is even stronger than for cases
        ending in conviction.................................................29

 II.  The District Court Erred in Denying Plaintiffs' Motion for
      Summary Judgment Because the Department Failed to Carry
      Its Evidentiary Burden .............................................36

CONCLUSION...................................................................44

CERTIFICATE OF COMPLIANCE.......................................46

CERTIFICATE OF SERVICE ...............................................46

# TABLE OF AUTHORITIES[*]

**Cases**

*Allen v. CIA*, 636 F.2d 1287 (D.C. Cir. 1980) .............................................. 37

*American Civil Liberties Union v. U.S. Dep't of Justice*,
   923 F. Supp. 2d 310 (D.D.C. 2013) .................................................. 7, 9, 16

*\*American Civil Liberties Union v. U.S. Dep't. of Justice*,
   655 F.3d 1 (D.C. Cir. 2011) .... 5, 6, 9, 21, 22, 23, 37, 28, 29, 30, 32, 34, 41

*American Civil Liberties Union v. Dep't of Justice*, 698 F. Supp. 2d 163

   (D.D.C. 2010) ............................................................................ 6

*Bevis v. Dep't of State*, 801 F.2d 1386 (D.C. Cir. 1986) .............................. 37

*\*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854
   (D.C. Cir.1980) ................................................................. 36, 44

*Dep't of Justice v. Reporters Committee for Freedom of the Press*,
   489 U.S. 749 (1989) ............................................... 23, 24, 26, 33

*Gallant v. NLRB*, 26 F.3d 168 (D.C. Cir. 1994) ......................................... 21

*Judicial Watch, Inc. v. Dep't of Homeland Security*, 841 F. Supp. 2d 142
   (D.D.C. 2012) ................................................................. 37

*\*King v. Dep't of Justice*, 830 F.2d 210 (D.C. Cir. 1987) ............... 35, 36, 37

*Lopez v. Dep't of Justice*, 393 F.3d 1345 (D.C. Cir. 2005) .......................... 44

*Maydak v. Dep't. of Justice*, 218 F.3d 760 (D.C. Cir. 2000) ....................... 37

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002) ...... 25

*Public Citizen, Inc. v. Office of Management and Budget*, 569 F.3d 434

---

[*] Authorities chiefly relied upon are marked with asterisks.

(D.C. Cir. 2009) ........................................................................ 44

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) .................. 27

*\*Schrecker v. Dep't of Justice*, 254 F.3d 162 (D.C. Cir. 2001) .................. 38

*Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657
(D.C. Cir. 2003) ..................................................... 32, 34, 35, 38

*Shell Oil Co. v. Iowa Dept. of Revenue*, 488 U.S. 19 (1988) ..................... 26

*U.S. Dep't of Defense v. FLRA*, 510 U.S. 487 (1994) ................................... 6

**Statutes**

28 U.S.C. § 1291 ........................................................................ 1

28 U.S.C. § 1331 ........................................................................ 1

5 U.S.C. § 552 ........................................................... 1, 2, 6, 21, 37

Maine Public Law, Chapter 409 (2013) ....................................... 32

Montana HB 0603 (2013) .......................................................... 32

**Other Authorities**

*The Electronic Communications Privacy Act (ECPA), Part 2:
Geolocation Privacy and Surveillance: Hearing Before the Subcomm. on
Crime, Terrorism, Homeland Sec. & Investigations of the H. Comm. on
the Judiciary* 113th Cong. (2013) (statement of Matt Blaze, Associate
Professor, University of Pennsylvania) ..................................... 12

*Hearing on ECPA Reform and the Revolution in Location Based
Technologies and Services Before the Subcomm. on the Constitution,
Civil Rights, and Civil Liberties of the H. Comm. on Judiciary*,
111th Cong. (2010) (testimony of Professor Matt Blaze) .................. 14, 15

Center for Democracy & Technology, Cell Phone Tracking:

Trends in Cell Site Precision 2 (2013) ...................................................... 13

CTIA – The Wireless Association, *Semi-Annual Wireless Industry Survey*
(2012) ................................................................................................ 12, 13

*U.S. Wireless Quick Facts*, CTIA – The Wireless Association................... 11

Mary Madden et al., *Teens and Technology 2013*, Pew Internet and
American Life Project (Mar. 13, 2013)...................................................... 15

*The Privacy Implications of Commercial Location-Based Services:*
*Testimony Before the Subcomm. on Commerce, Trade, and*
*Consumer Protection and Subcomm. on Communications,*
*Technology, and the Internet of the H. Comm. on Energy &*
*Commerce*, 111th Cong. (2010) (statement of John B.
Morris, Jr., General Counsel, and Director of Internet Standards,
Technology & Policy Project, Center for Democracy &
Technology)................................................................................................16

Restatement (Second) of Torts § 652D (1977)........................................... 24

Aaron Smith, Pew Research Ctr., *Smartphone Ownership –2013 Update*
(June 5, 2013) ................................................................................... 10, 15

# GLOSSARY

*ACLU v. DOJ* ……………………. *American Civil Liberties Union v. U.S. Dep't. of Justice*, 655 F.3d 1 (D.C. Cir. 2011)

*ACLU II* ................*American Civil Liberties Union v. U.S. Dep't of Justice*, 923 F. Supp. 2d 310 (D.D.C. 2013)

Department.....................................the United States Department of Justice

DOJ ................................................the United States Department of Justice

DOJ MSJ....................................Memorandum in Support of United States Department of Justice's Second Motion for Summary Judgment (ECF No. 58-1)

DOJ Second Statement of Facts ........................ DOJ Second Statement of Material Facts Not in Dispute (ECF No. 58-2)

Exemption 7(C)......................................................5 U.S.C. § 552(b)(7)(C)

FOIA .......................................................... the Freedom of Information Act

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

No. 13-5064

———————

AMERICAN CIVIL LIBERTIES UNION, *et al.,*

*Plaintiffs-Appellants,*

v.

DEPARTMENT OF JUSTICE,

*Defendant-Appellee.*

———————

On Appeal from the
United States District Court
for the District of Columbia
No. 1:08-cv-1157 (ABJ)

———————

# BRIEF FOR APPELLANTS

———————

## JURISDICTIONAL STATEMENT

The district court had jurisdiction to review the Defendant's refusal to disclose records responsive to Plaintiffs' Freedom of Information Act request pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. This appeal is from a final judgment entered on February 15, 2013, that disposed of all claims of all parties. Appellants' timely notice of appeal was filed on February 25, 2013.

## ISSUES PRESENTED

This appeal presents two questions under the Freedom of Information Act ("FOIA").  Appellants ("Plaintiffs") seek basic docket information (case name, docket number, and court) for six public criminal prosecutions brought by the United States in which the government had obtained cell phone location information about a defendant without first securing a warrant based upon probable cause.  Defendant Department of Justice ("Department" or "DOJ") has refused to disclose the docket information on the ground that the charges in those cases had eventually been dropped or that the defendants had been acquitted.  The questions are:

1.  Whether the district court erred in denying Plaintiffs' motion for summary judgment, where the Department failed to demonstrate that disclosure of the docket information "could reasonably be expected to constitute an unwarranted invasion of personal privacy" under 5 U.S.C. § 552 (b)(7)(C) ("Exemption 7(C)").

2.  Alternatively, whether the district court erred in granting summary judgment to the Department and denying summary judgment to the Plaintiffs where the Department's declaration provided the court with no basis meaningfully to assess the Department's assertion that disclosure of the docket information could reasonably be expected to constitute an

unwarranted invasion of personal privacy, and where the Department refused to disclose important and easily ascertainable facts about the six cases at issue that the district court should have considered in determining whether disclosure of the docket information could reasonably be expected to constitute an unwarranted invasion of personal privacy.

## PERTINENT STATUTORY PROVISIONS

**The Freedom of Information Act**

**5 U.S.C. § 552. Public information; agency rules, opinions, orders, records, and proceedings**

**(a)** Each agency shall make available to the public information as follows:

\* \* \*

   **(3)(A)** \* \* \* each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

\* \* \*

   **(4)(B)** On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to

technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

* * *

**(b)** This section does not apply to matters that are--

* * *

   **(6)** personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

   **(7)** records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

* * *

## STATEMENT OF THE CASE

   This case has been here before. *See American Civil Liberties Union v.*

*U.S. Dep't. of Justice*, 655 F.3d 1 (D.C. Cir. 2011) (Garland, Ginsburg and

Williams, JJ.), reproduced at JA 36-57 ("*ACLU v. DOJ*").  It is here now on

Plaintiffs' appeal after the district court's decision on remand.

In November 2007, Plaintiffs made a FOIA request to the Executive

Office for United States Attorneys, a component of DOJ, seeking records

relating to the Department's use of cell phone location data in criminal

prosecutions.  *See* JA 21-28 (FOIA request).  The request sought five

categories of records; only a portion of the fifth category is still at issue.  In

that category, Plaintiffs asked for

> The case name, docket number, and court of all criminal
> prosecutions, current or past, of individuals who were tracked
> using mobile location data, where the government did not first
> secure a warrant based on probable cause for such data.

JA 22.  Plaintiffs asked the Executive Office to search for such records in

certain of its own offices and in the United States Attorney's Offices in six

states and the District of Columbia.  *Id.*  The Executive Office identified 229

responsive prosecutions.  *See* DOJ Second Statement of Material Facts Not

in Dispute ¶ 6, ECF No. 58-2 ("DOJ Second Statement of Facts"), JA 62.[1]

However, the Department withheld the docket information for all 229

responsive cases under FOIA Exemption 7(C), which permits agencies to

---

[1]  With the district court's approval, the parties agreed that rather than
providing "records," as FOIA requires, the Department could simply provide
the requested docket information.  *See* DOJ Second Statement of Facts ¶ 3,
JA 61.

withhold law-enforcement records that, if released, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). DOJ Second Statement of Facts ¶ 5, JA 62. [2]

On cross-motions for summary judgment, the district court (James Robertson, J.) ruled that docket information for prosecutions that resulted in public convictions or guilty pleas must be released, but that docket information for prosecutions that resulted in acquittals or dismissals were exempt under Exemption 7(C). *American Civil Liberties Union v. Dep't of Justice*, 698 F. Supp. 2d 163 (D.D.C. 2010), JA 29-34. Both sides appealed.[3]

This Court affirmed the ruling that docket information regarding prosecutions resulting in public convictions or guilty pleas must be released. *ACLU v. DOJ*, 655 F.3d at 19-20, JA 57. Writing for a unanimous panel, then-Circuit Judge Garland explained that such information "is at the lower

---

[2] The Department also relied on FOIA Exemption 6, 5 U.S.C. § 552 (b)(6), but the parties agree that the Court need address only Exemption 7(C). Where, as here, records withheld under both exemptions were compiled for law enforcement purposes, "'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material." *ACLU v. DOJ*, 655 F.3d at 6 (quoting *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 496 n.6 (1994)), JA 43.

[3] Judge Robertson also ruled that docket information about sealed cases was exempt. Plaintiffs had not pressed for information about sealed cases and did not appeal that ruling.

end of the privacy spectrum," *id*. at 7, JA 44, as it would "disclose only information that has already been the subject of a public proceeding (either a trial or public guilty plea), rather than actions (like arrests) that may not have taken place in public.  It would disclose only information that is available in public records, which post-indictment filings always are." *Id*. at 8, JA 45.

Regarding prosecutions resulting in dismissals or acquittals, the Court noted that "the record does not reveal whether there are any [such] cases" among the responsive records, and rather than "resolve a question that may turn out to be purely academic," *id*. at 17, JA 55, the Court vacated that portion of the district court's decision and remanded the case for the district court "to develop the factual information . . . and, thereafter, to reconsider the appropriate disposition of the remaining aspects of the case." *Id*. at 20, JA 57.[4]

On remand, the Department informed the district court and Plaintiffs that the responsive records included three cases in the District of Columbia in which the charges had been dismissed, one case in the Northern District

---

[4]  The remand also called for factfinding regarding a draft application to engage in warrantless cell phone tracking ("Document 22") and a template application ("Document 29").  *Id*. at 17–18, JA 55-56.  Those issues are moot.  On remand, the Department released the disputed portion of Document 29 and explained in greater detail why it had withheld Document 22; Plaintiffs then dropped their challenge to that withholding. *See American Civil Liberties Union v. U.S. Dep't of Justice*, 923 F. Supp. 2d 310, 312 n.2 (D.D.C. 2013) ("*ACLU II*"), JA 84 n.2.

of California in which the charges had been dismissed, and two cases in the

Southern District of Florida in which the defendant(s) had been acquitted.

*See* Declaration of John F. Boseker ¶ 17, ECF No. 58-3, JA 71.  The

Department continued to withhold the docket information on those six

public prosecutions.

The parties again filed cross-motions for summary judgment.  The

Department argued that, even in the absence of any factual information

about the six cases except their outcomes, the docket information was

exempt under Exemption 7(C) because disclosure "could reasonably be

expected to constitute an unwarranted invasion of personal privacy."

Plaintiffs argued that no unwarranted invasion of personal privacy could

reasonably be expected to result from the release of public docket

information about public criminal prosecutions.

Plaintiffs additionally argued that the Department was not entitled to

summary judgment because it bore the burden of demonstrating that the

grounds for the exemption were satisfied, but had failed to carry that burden

by refusing to provide the court with an adequate factual basis on which to

assess whether they were — for example, whether the Department had

issued press releases naming the defendants in these cases, whether the

indictments or trials had been covered by the news media, whether a court

had issued an opinion in connection with the case, whether a motion to suppress evidence derived from cell tracking had been made and decided, and even whether the defendant was alive or dead [5] — all matters within the exclusive knowledge of the Department, and all matters that Plaintiffs had called upon the Department to provide.

In February 2013, the district court (Amy Berman Jackson, J., to whom the case had been reassigned following the retirement of Judge Robertson) issued its decision.  It took note of the undisputed fact that there were six cases in the "dismissed or acquitted" category.  *ACLU II*, 923 F. Supp. 2d at 313, JA 85.  But it declined to "reconsider the appropriate disposition of the remaining aspects of the case," as this Court had directed, *ACLU v. DOJ*, 655 F.3d at 20, JA 57, simply stating that this Court had "not criticized or overturned" Judge Robertson's rulings.  *ACLU II*, 923 F. Supp. 2d at 314, JA 86.  The district court failed even to take note of Plaintiffs' argument that the absence of any facts in the record about the six cases, other than their outcomes, was insufficient to support summary judgment for the Department.  Accordingly, the court again entered summary judgment for the Department.  *Id*. at 314, JA 86; JA 87 (Order).

---

[5]  One reason criminal charges are dismissed is the death of the defendant.

After filing a timely appeal, Plaintiffs brought to this Court's attention the district court's failure to follow this Court's instructions on remand, and suggested that "[i]f the Court is inclined to remand the case . . . it be remanded now, rather than after full briefing and argument."  Motion for Summary Reconsideration of the Propriety of Remand at 1 (filed April 12, 2013).  However, Plaintiffs made it clear that they believed a remand was neither required nor advisable, and that they preferred for "this Court [to] proceed to decide this appeal on the merits." *Id*.

Responding, the Department found no fault with the district court's action on remand, and agreed that this Court should proceed to the merits. Response in Opposition to Motion for Summary Consideration of the Propriety of Remand (filed April 25, 2013).  On July 5, 2013, a motions panel (Henderson, Rogers, and Tatel, JJ.) denied Plaintiffs' motion and instructed the Clerk to calendar the case for presentation to a merits panel.

## STATEMENT OF FACTS

### A.  Facts about cell phone tracking

Cell phone use has become ubiquitous: as of June 2013, ninety-one percent of the adult population of the United States owned cell phones.[6]  As

---

[6]  Aaron Smith, Pew Research Ctr., *Smartphone Ownership – 2013 Update 2* (June 5, 2013), *available at*

10

of December 2012, there were 326.4 million wireless subscriber accounts in the United States, a number that exceeds the total population.[7]  These accounts are responsible for 2.30 trillion annual minutes of calls and 2.19 trillion annual text messages.[8]  One in three U.S. households has only wireless telephones.[9]

While cell phones are best known as devices used to send and receive phone calls, text messages, and e-mail, they are also perfectly suited for use as tracking devices.  As a result, cell phone technology has given law enforcement a new surveillance tool of previously unimagined magnitude.  With assistance from mobile phone carriers, the U.S. government now has the technical capability to track any one of the nation's hundreds of millions of cell phone owners, twenty-four hours a day, for as long as it likes.

Cell phones yield several types of information about their users' past and present location. The most basic type of cell phone location information is "cell site" data, which refers to the identity of the cell tower the phone is nearest and the sector of the tower facing the phone.  This data is generated

---

http://pewinternet.org/~/media//Files/Reports/2013/PIP_Smartphone_adopti on_2013.pdf.

[7]  *U.S. Wireless Quick Facts*, CTIA – The Wireless Association, *available at* http://www.ctia.org/advocacy/research/index.cfm/aid/10323.

[8]  *Id.*

[9]  *Id*.

because, whenever users have their cell phones on, "[c]ell phone handsets periodically (and automatically) identify themselves to the nearest base station (that with the strongest radio signal) as they move about the coverage area."[10] Most cell sites consist of three directional antennas that divide the cell site into sectors (usually of 120 degrees each),[11] but an increasing number of towers have six sectors.[12] Two types of cell site location data are usually available: historical cell site data, which can be used to retrace previous movements for which records exist, and prospective cell site data, which can be used to track the phone in real-time whenever the phone is turned on.

The precision of cell site location information depends, in part, on the size of the coverage area of each cell tower. Cell site density is increasing

---

[10] *The Electronic Communications Privacy Act (ECPA), Part 2: Geolocation Privacy and Surveillance: Hearing Before the Subcomm. on Crime, Terrorism, Homeland Sec. & Investigations of the H. Comm. on the Judiciary* 113th Cong. 6 (2013) (statement of Matt Blaze, Associate Professor, University of Pennsylvania), a*vailable at* http://judiciary.house.gov/hearings/113th/04252013/Blaze%2004252013.pdf .

[11] Thomas A. O'Malley, *Using Historical Cell Site Analysis Evidence in Criminal Trials*, U.S. Attorneys' Bull., Nov. 2011, at 16, 19, *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usab5906.pdf.

[12] Transcript of Feb. 6, 2012 Jury Trial Proceedings at 220, Docket No. 283, *United States v. Davis*, No. 10-20896-CR (S.D. Fla.).

rapidly, largely as a result of the growth of Internet usage by smartphones.[13]

Each cell site can supply a fixed volume of data required for text messages,

emails, web browsing, streaming video, and other uses.  Therefore, the only

way for providers to maintain adequate coverage as smartphone data usage

increases is to erect more cell sites or add antennas to existing cell sites.  As

new cell sites are erected, the coverage areas around existing nearby cell

sites will be reduced, so that the signals sent by those sites do not interfere

with each other.[14]  As a result, the precision of cell tracking is constantly

increasing.

        In addition to erecting new conventional cell sites, providers are also

able to increase their network coverage using low-power small cells, called

"microcells," "picocells," and "femtocells," which provide service to areas

as small as ten meters.[15]  Femtocells are frequently provided by carriers

directly to consumers with poor cell phone coverage in their homes or

---

[13]  *See* CTIA – The Wireless Association, Semi-Annual Wireless Industry
Survey 2 (2012), *available at*
http://files.ctia.org/pdf/CTIA_Survey_MY_2012_Graphics-_final.pdf
(showing that the number of cell sites in the United States has more than
doubled in the last decade, with 285,561 as of June 2012); *id.* at 8 (wireless
data traffic increased by 586% between 2009 and 2012).

[14]  *See* Center for Democracy & Technology, Cell Phone Tracking: Trends in
Cell Site Precision 2 (2013), *available at* https://www.cdt.org/files/file/ cell-
location-precision.pdf.

[15]  *Id.*

13

offices and the number of femtocells nationally now exceeds the number of traditional cell sites.[16]  Because the coverage area of femtocells is so small, callers connecting to a carrier's network via femtocells can be located to a high degree of precision, "sometimes effectively identifying individual floors and rooms within buildings."[17]  Femtocells with ranges extending outside of the building in which they are located can also provide cell connections to passersby, providing highly precise information about location and movement on public streets and sidewalks.

Beyond using single cell site data, law enforcement can also obtain precise location information at a high level of accuracy through "triangulation," which entails collecting and analyzing data about the time and the angle at which a cell phone's signal arrives at multiple cell towers.[18] Current technology can pinpoint the location of a cell phone to within fifty meters or less, and the accuracy will improve with newer technology.[19]  The availability of the information and the length of time during which it is

---

[16]  *Id.* at 3.

[17]  Blaze testimony (2013), *supra* note 10, at 12.

[18]  *Hearing on ECPA Reform and the Revolution in Location Based Technologies and Services Before the Subcomm. on the Constitution, Civil Rights, and Civil Liberties of the H. Comm. on Judiciary*, 111th Cong. 10 (2010) (testimony of Professor Matt Blaze), *available at* http://judiciary.house.gov/hearings/pdf/Blaze100624.pdf.

[19]  *Id.*

stored depend on the policies of the cell phone carrier, but some carriers appear to be already recording and storing "frequently updated, highly precise, location information not just when calls are made or received, but about every device as it moves about the networks."[20] It is expected that, as technology progresses, more carriers will store more detailed records of individuals' locations for a longer period of time.[21]

Finally, cell phones that have GPS capability, such as "smartphones," can determine their own precise locations by receiving signals from global positioning satellites.[22] A majority of American adults and almost half of U.S. teenagers now use "smartphones."[23] Current GPS technology is able to pinpoint location with great accuracy outdoors, typically within ten meters.[24] Using "assisted GPS" technology, which combines GPS and triangulation, it is possible to obtain such accurate location information even when a cell

---

[20] *Id.* at 11.

[21] *Id.*

[22] *Id.* at 5.

[23] *See* Aaron Smith, *Smartphone Ownership 2013*, Pew Internet and American Life Project (June 5, 2013), http://www.pewinternet.org/Reports/2013/Smartphone-Ownership-2013.aspx; Mary Madden et al., *Teens and Technology 2013*, Pew Internet and American Life Project (Mar. 13, 2013), http://www.pewinternet.org/Reports/2013/Teens-and-Tech.aspx.

[24] Blaze testimony (2010), *supra* note 18, at 5.

phone is inside a home or a building.[25]

## B.  Facts about the prosecutions at issue

All that is known about the six federal prosecutions whose docket information is at issue is that they were all public (not sealed); that three were filed in the District of Columbia, and the charges eventually were dismissed; that one was filed in the Northern District of California, and the charges eventually were dismissed; and that two were filed in the Southern District of Florida, and the defendant (or defendants) eventually were acquitted.  *See* Declaration of John F. Boseker ¶ 17, JA 71; *ACLU II*, 923 F. Supp. 2d at 313, JA 85.

The Department did not inform the district court whether the cases that were dismissed were dismissed by the prosecution or by the court; whether the dismissals followed rulings on motions to dismiss, or motions to

---

[25]  *The Privacy Implications of Commercial Location-Based Services: Testimony Before the Subcomm. on Commerce, Trade, and Consumer Protection and Subcomm. on Communications, Technology, and the Internet of the H. Comm. on Energy & Commerce*, 111th Cong. 4 (2010) (statement of John B. Morris, Jr., General Counsel, and Director of Internet Standards, Technology & Policy Project, Center for Democracy & Technology),*available at* http://democrats.energycommerce.house.gov/Press_111/20100224/Morris.T estimony.2010.02.24.pdf; James Connell, *Can Galileo Locate the Money?*, International Herald Tribune, May 22, 2006, *available at http://www.nytimes.com/2006/05/22/technology/22iht-wireless23.1798122.html.*

suppress evidence; whether the dismissals followed rulings by an appellate court, or whether the cases involved reported opinions.

Regarding the cases in which the defendants were acquitted, the Department did not inform the district court whether the defendants were acquitted after a single trial, or after a second or subsequent trial following appellate proceedings; whether any of these cases involved motions to dismiss or motions to suppress evidence gathered through cell phone tracking; or whether the cases involved reported opinions.

Regarding all of the cases, the Department did not inform the district court—

—What crime or crimes the defendant was charged with having committed;

—Whether the Department of Justice, a United States Attorney's Office, or any other agency of the United States government issued a press release or posted a story on a website announcing the defendant's arrest and/or the filing of an indictment or information;

—Whether the Department of Justice, a United States Attorney's Office, or any other agency of the United States government held a press conference announcing the defendant's arrest and/or the filing of an indictment or information;

17

—Whether the defendant's arrest and/or the filing of an indictment or information was reported in the news media;

—Whether there were public pretrial proceedings, and whether they were reported in the news media;

—Whether there was a trial, and whether it was by jury or to the bench;

—If there was a trial, whether it was reported in the news media;

—Whether the Department of Justice, a United States Attorney's Office, or any other agency of the United States government issued a press release, held a press conference, or posted a story on a website regarding the termination of the case;

—Whether the government disclosed to the defendant, or whether the defendant otherwise learned, that he or she had been subject to cell phone tracking;

—Whether the defendant filed a motion to suppress the evidence that had been gathered by cell phone tracking, whether there was an evidentiary hearing on such a motion, and the disposition of such a motion;

— Whether evidence that had been gathered by cell phone tracking was offered at trial;

18

—  Whether any court opinion or memorandum issued in connection with the case mentioned cell phone tracking;

— If the charges were dismissed, whether the grounds for dismissal involved the fact that cell phone tracking had been used;

—Whether the defendant is currently in federal custody;

—Whether the defendant is currently on the nationwide list of registered sex offenders (a/k/a/ Megan's List); or

—Whether the defendant is alive or deceased.

Plaintiffs called the district court's attention to the absence of these facts from the record, pointed out that they were in the sole possession of (or could be ascertained only by) the Department, and argued to the district court that their absence precluded the entry of summary judgment for the Department.  *See* Plaintiffs' Second Motion for Summary Judgment and Opposition to Defendant's Second Motion for Summary Judgment at 13-16, ECF Nos. 59 & 60; Plaintiffs' Second Statement Regarding Material Facts at 1-3, ECF No. 59-1, JA 78-80.  The Department's subsequent Reply in Support of its Second Motion for Summary Judgment and Opposition to Plaintiffs' Second Motion for Summary Judgment, ECF Nos. 62 & 63, did not provide any of these facts.

19

## SUMMARY OF ARGUMENT

Determining whether release of the requested public docket information could reasonably be expected to constitute an unwarranted invasion of personal privacy requires the Court to balance the weight of the criminal defendants' privacy interests in shielding their already-public prosecutions from additional public knowledge against the weight of the public interest in learning about the role that warrantless cell phone tracking played in their cases.

This Court has already conducted that balance with respect to criminal defendants who were convicted, determining that the balance tilted decisively in favor of disclosure. The balance with respect to criminal defendants who were acquitted or whose cases were dismissed tilts the same way. The privacy interest of such defendants is only marginally greater — after all, criminal prosecutions that end in dismissal or acquittal are just as public as prosecutions that end in conviction — and is easily outweighed by the significantly greater public interest in such cases, since they are more likely to have involved government overstepping, including perhaps violations of constitutional rights, and therefore may provide citizens with far more important information about "what their government is up to." Summary judgment therefore should have been granted to Plaintiffs.

20

In any event, the district court erred in granting summary judgment to the Department and denying it to Plaintiffs, because the Department bears the burden of demonstrating the applicability of a statutory exemption but failed to carry that burden by choosing not to provide the district court with information adequate to support a conclusion that the privacy interests of the criminal defendants in the six cases at issue had not already been so compromised — for example, by DOJ press releases or media coverage of their trials — that release of the requested docket information would work no further invasion of privacy.

## ARGUMENT

**Standard of review.** This Court reviews *de novo* the district court's rulings on summary judgment. *ACLU v. DOJ,* 655 F.3d at 5, JA 42. "'In the FOIA context this requires that [the Court] ascertain whether the agency has sustained its burden of demonstrating that the documents requested are . . . exempt from disclosure under the FOIA.'" *Id.* (quoting *Gallant v. NLRB,* 26 F.3d 168, 171 (D.C. Cir. 1994)); *see* 5 U.S.C. § 552 (a)(4)(B) ("the burden is on the agency to sustain its action").

### I. The District Court Erred in Denying Plaintiffs' Motion for Summary Judgment Because the Fact of a Public Criminal Prosecution is Not an Invasion of Privacy

The Department of Justice continues to withhold basic public docket

information for six *public criminal prosecutions* in which the defendants were tracked using cell phone location data that was obtained without a warrant based on probable cause.  The question before the Court is whether that docket information may lawfully be withheld under FOIA Exemption 7(C) because its release "could reasonably be expected to constitute an *unwarranted* invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C) (emphasis added).

In its earlier decision in this case, this Court ordered the release of docket information connected to cases involving public convictions or guilty pleas, and recognized that "the disclosure of information regarding acquittals [or] dismissal of charges . . . raises greater privacy concerns."  *ACLU v. DOJ,* 655 F.3d at 17, JA 54.  "But whether that is enough of a distinction to justify withholding under Exemption 7(C) is a harder question."  *Id*., JA 55.

In addressing that question now, the Court can take considerable guidance from its earlier opinion, which found that the privacy interests involved were entitled to very little weight, while the public interest in disclosure was entitled to considerable weight.  And as we show below, the public interest in disclosure is even stronger here.  Thus, while the question now before the Court may be marginally harder than the question resolved in

22

the earlier appeal, it is still not very hard; the distinction is not great enough to warrant a difference in the result.

### A.  A person's privacy interest in the fact that he or she was publicly indicted in federal court is minimal

The defendants in the six prosecutions at issue in this appeal have only a minimal privacy interest in the fact that they were indicted, because that fact is already in the public record.

Plaintiffs recognize, as this Court did, that in *Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 780 (1989), the Supreme Court held that release of an FBI "rap sheet" — which might include a record of criminal convictions, along with other information — constituted an unwarranted invasion of personal privacy under Exemption 7(C).  But as this Court has already explained, the "privacy interests at stake in this case, however, are considerably weaker than those at issue in *Reporters Committee.*"  *ACLU v. DOJ*, 655 F.3d at 8, JA 45.

First, the Court noted that the request here, unlike the request in *Reporters Committee,* "would disclose only information that is available in public records."  *Id.*  Significantly, the rap sheets sought in *Reporters Committee* included the subjects' "date of birth and physical characteristics, as well as a history of arrests, charges, convictions, and incarcerations" in every jurisdiction in the country.  *Id.* (quoting *Reporters Committee,* 489

23

U.S. at 752).

Second, this Court recognized that "the information at issue here is all less than (and probably quite a bit less than) ten years old, unlike the *Reporters Committee* rap sheets that recorded a lifetime of everything from major crimes to youthful indiscretions." *Id*. at 8-9 (footnote omitted), JA 45.

Third, this Court emphasized that "[t]he fact that information about these proceedings is readily available to the public reduces further still the incursion on privacy resulting from disclosure," *id*. at 9, JA 46, noting that the Supreme Court had recognized that "'the interests in privacy *fade* when the information involved already appears on the public record.'" *Id.* (quoting *Reporters Committee,* 489 U.S. at 763 n.15) (emphasis in original).[26]

Fourth, this Court found that, unlike the information contained in the rap sheets in *Reporters Committee,* "the information at issue here is not practically obscure," and therefore does *not* support the argument that "an individual's privacy interest in limiting disclosure or dissemination of

---

[26] In the same footnote, the Supreme Court pointed out that "[t]here is no liability for giving publicity to facts about the plaintiff's life that are matters of public record" (quoting Restatement (Second) of Torts § 652D, pp. 385-386 (1977)), thus recognizing that in the eyes of the common law, publicizing such facts involves no *unwarranted* invasion of privacy. *Reporters Committee*, 489 U.S. at 763 n.15. It is not apparent why a federal statute whose fundamental purpose is to require public access to government information should be construed to provide greater protection for matters of public record than the common law does.

information does not disappear just because it was once publicly released."

*Id*. "To the contrary," the Court explained, "computerized government

services like PACER make it possible to access court filings concerning any

federal defendant from the comfort of one's home or office . . . . In addition,

newspapers regularly report on federal prosecutions, and their accounts can

easily be found on the internet. Indeed, by routinely issuing press releases

that name the individuals that it has indicted . . . the Justice Department has

itself made the process infinitely easier. If someone wants to know whether

his neighbor or potential employee has been indicted for . . . a federal

offense, he may well find out by simply entering a Google search for that

person's name." *Id*. at 10 (footnote omitted), JA 47. Indeed, "Google

searches for variations of the phrase 'the United States Attorney . . .

announced the indictment of,' restricted to the last ten years, yield *thousands*

of results." *Id*. at 10 n.13, JA 47 (emphasis added).

    Fifth, this Court squarely rejected DOJ's argument that "the

disclosures sought here will draw renewed attention to individuals in a way

that the initial disclosures did not," characterizing that argument as "little

more than speculation." *Id*. at 10, JA 47. While the Court's earlier

discussion related to initial disclosures of convictions as well as indictments,

it is fully as true that the release of "a list of docket numbers, courts, and

25

case names" involving indictments is "surely less likely to draw attention to a name than was the initial press coverage of an indictment." *Id.* (citing *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34-35 (D.C. Cir. 2002) (noting that Norton "discount[ed] the import of an asserted interference with personal privacy because the agency failed to show that such interference '[was] likely to occur'") (second alteration in original).

In all these respects, there is no difference between cases in which defendants were convicted (as to which this Court already ordered release of docket information) and the cases now at issue in which defendants were publicly indicted but not convicted.[27]

On remand, the Department sought to make this case seem more like *Reporters Committee* by arguing that the presumption of innocence means

---

[27] This Court recognized that in *Reporters Committee* the Supreme Court made a "categorical" statement that "'a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy.'" *Id.* at 8, JA 45 (quoting *Reporters Committee,* 489 U.S. at 780). The Court nevertheless held that release of docket information about cases involving convictions would not cause an unwarranted invasion of the defendants' privacy.

"[T]he meaning of words depends on their context," *Shell Oil Co. v. Iowa Dept. of Revenue*, 488 U.S. 19, 25 (1988), and the Supreme Court's "categorical" statement in *Reporters Committee* about privacy interests in "law enforcement records or information" must be understood in the context of the kinds of law enforcement records or information the Court was thinking about in that case, such as the "rap sheets" at issue there. It is unlikely that the Supreme Court was thinking about public docket sheets in federal courts, nor could the Court have anticipated the easy ability to search for party names in federal cases nationwide using PACER.

"prosecuted-but-not-convicted individuals are thus in a similar position to persons investigated or arrested but not prosecuted: they are associated with *alleged* criminal activity, nothing more."  Memorandum in Support of United States Department of Justice's Second Motion for Summary Judgment at 15 (ECF No. 58-1) ("DOJ MSJ").

But the Department demonstrably does not believe this, for it does not hold press conferences and issue press releases about persons who are investigated but not prosecuted.  Grand jury investigations are secret by statute, court rule, and long tradition; by contrast, unsealed indictments, pretrial proceedings, and trials are public, even if they ultimately result in dismissal or acquittal.  The presumption of innocence is certainly a fundamental tenet of our criminal justice system, but so is the public's right to observe the criminal justice system in action, including the arraignment and trial of presumptively innocent defendants.  *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) ("a presumption of openness inheres in the very nature of a criminal trial under our system of justice").

The Department also observed that "convicted criminals have a privacy interest in 'successful reintegration into the community'. . . [that] will be 'endanger[ed]'" by disclosure," DOJ MSJ at 16 (quoting *ACLU v. DOJ*, 655 F.3d at 7, JA 44) (alteration by DOJ), and argued that this privacy

27

interest is "even stronger" for people who have not been convicted. *Id*. That

argument also makes no sense. People who have not been convicted do not

need to "reintegrat[e] into the community," because they have not been

removed from the community.[28] Prison is where we send convicts, not

defendants who are acquitted or whose indictments are dismissed. It is

possible that new publicity about a past charge will impose a certain amount

of "stigma and embarrassment" on a person who was acquitted, *id*., but

surely *much less* than on a person who was convicted, and this Court has

already ruled that disclosure is mandated for people who were convicted,

despite the much greater stigma and embarrassment they are likely to suffer

thereby. In any event, as this Court pointed out, the prosecutions at issue

here involve recent charges, not ancient, forgotten charges dredged up from

the distant past, *see ACLU v. DOJ*, 655 F.3d at 8-9 & n.11, JA 45-46, and if

"someone wants to know whether his neighbor or potential employee has

been indicted for . . . a federal offense, he may well find out by simply

entering a Google search for that person's name," *id*. at 10, JA 47, thanks to

the Department of Justice's own well-oiled publicity machine for

---

[28] A small fraction of defendants are detained pretrial for such an extended time that they may need to reintegrate into the community. The Department has provided no facts indicating that any of the defendants in the six prosecutions at issue here were detained pretrial for such an extended time, although it easily could have provided such facts had they been true.

indictments as well as the news media's constitutionally guaranteed right to report on criminal proceedings.

Finally, the Department argued below that the ACLU or others would intrude in an unwarranted manner on a privacy interest if they were to contact defendants or their counsel to learn more about their cases, or to inform them that cell phone tracking had been used in their cases. DOJ MSJ at 17. But this Court has already rejected that very argument:

> [I]n all of those cases [cited by the Department], the intrusive contact likely to follow from disclosure was enormously greater than the relatively minimal potential contact at issue in this case. Moreover, in each of those cases, the courts found that the privacy impact outweighed the public interest in disclosure because the public interest was either negligible or non-existent. . . . [T]he public interest in disclosure is substantially higher in this case and more than sufficient to tip the scales against the marginal privacy intrusion that could occur.

*ACLU v. DOJ*, 655 F.3d at 11-12, JA 48 (footnotes omitted).

As the foregoing discussion demonstrates, the defendants in the six public criminal prosecutions at issue have only minimal privacy interests in the fact that they were *publicly indicted* for federal offenses.

## B. The public interest in information about cases ending in dismissal or acquittal is even stronger than for cases ending in conviction

In deciding whether release of the requested docket information would be an *unwarranted* invasion of personal privacy under FOIA

29

Exemption 7(C), the Court must balance the defendants' minimal privacy

interests against the public interest in release.

This Court has already recognized that there is a strong public interest

in disclosure of the requested information:

> The use of and justification for warrantless cell phone
> tracking is a topic of considerable public interest: it has
> received widespread media attention and has been a focus of
> inquiry in several congressional hearings . . . .

> The disclosure sought by the plaintiffs would inform this
> ongoing public policy discussion by shedding light on the scope
> and effectiveness of cell phone tracking as a law enforcement
> tool. It would, for example, provide information about the kinds
> of crimes the government uses cell phone tracking data to
> investigate. As the plaintiffs note, with respect to wiretapping
> Congress has balanced privacy interests with law enforcement
> needs by permitting the government to use that technique for
> only the more serious offenses, *see* 18 U.S.C. § 2516, and the
> plaintiffs (and others) may decide to argue for similar
> legislation to govern cell phone tracking.

*ACLU v. DOJ*, 655 F.3d at 12-14, JA 50-51 (footnotes omitted).

The public interest in warrantless cell phone tracking, and the public

policy discussion regarding appropriate standards and limits on its use, has

only continued to grow as its widespread nature has become better known.

Thus, for example, the lead headline in the Sunday *New York Times* on April

1, 2012, was "Police Are Using Phone Tracking As A Routine Tool." The

lengthy article noted that "police records show many departments struggling

to understand and abide by the legal complexities of cellphone tracking,

even as they work to exploit the technology," and reported that "[i]n

interviews, lawyers and law enforcement officials agreed that there was

uncertainty over what information the police are entitled to get legally from

cell companies, what standards of evidence they must meet and when courts

must get involved." Meanwhile, "Congress and about a dozen states are

considering legislative proposals to tighten restrictions on the use of cell

tracking." [29] Even more recent coverage illustrates the continued public

interest and the continued controversy over cell phone tracking.[30] Indeed,

---

[29] Eric Lichtblau, *Police Are Using Phone Tracking as a Routine Tool*, N.Y. Times, Apr. 1, 2012, at A1, *available at* http://www.nytimes.com/2012/04/01/us/police-tracking-of-cellphones-raises-privacy-fears.html.

[30] *See, e.g.,* Andrea Peterson, *Your Location History Is Like a Fingerprint. And Cops Can Get It Without a Warrant*, Wash. Post (July 31, 2013), http://www.washingtonpost.com/blogs/the-switch/wp/2013/07/31/your-location-history-is-like-a-fingerprint-and-cops-can-get-it-without-a-warrant/; Kate Zernike, Court Restricts Police Searches of Phone Data, N.Y. Times, July 19, 2013, at A1, *available at* http://www.nytimes.com/2013/07/19/nyregion/new-jersey-supreme-court-restricts-police-searches-of-phone-data.html?pagewanted=all; Ryan Gallagher, *Maine Enacts Pioneering Law Prohibiting Warrantless Cellphone Tracking*, Slate (July 10, 2013), http://www.slate.com/blogs/future_tense/2013/07/10/new_maine_law_prohibits_warantless_cellphone_tracking.html; Joe Palazzolo, *Montana Requires Warrants for Cell Phone Tracking*, Wall St. J. (June 21, 2013), http://blogs.wsj.com/law/2013/06/21/montana-requires-warrants-for-cell-phone-tracking/; Peter Maass & Megha Rajagopalan, *That's No Phone. That's My Tracker.*, N.Y. Times, July 13, 2012, *available at* http://www.nytimes.com/2012/07/15/sunday-review/thats-not-my-phone-its-my-tracker.html; Suzy Khimm, *ACLU: Local Police Departments Tracking Cellphones Without Warrants*, Wash. Post, April 2, 2012, *available at* http://articles.washingtonpost.com/2012-04-

two states recently have enacted legislation requiring law enforcement agents to obtain warrants based on probable cause before employing cell phone tracking in criminal investigations.[31]

Thus, this Court's conclusion that "[t]he disclosure sought by the plaintiffs would inform this ongoing public policy discussion by shedding light on the scope and effectiveness of cell phone tracking as a law enforcement tool," *ACLU v. DOJ*, 655 F.3d at 13, JA 51, is at least as correct today as it was in 2011.

On remand, the Department did not deny the strong public interest in disclosure of the information Plaintiffs requested, but argued instead that the

---

02/business/35452751_1_track-cellphones-location-data-location-records; Bob Sullivan, *EXCLUSIVE: What Local Cops Learn, and Carriers Earn, from Cellphone Records*, NBC News (Apr. 18, 2012, 5:59 AM), http://www.nbcnews.com/technology/exclusive-what-local-cops-learn-carriers-earn-cellphone-records-721604; Peter Doocy, *Law Enforcement Under Scrutiny by ACLU for Tracking Cell Phones*, Fox News (Apr. 4, 2012), http://www.foxnews.com/politics/2012/04/04/law-enforcement-under-scrutiny-by-aclu-for-tracking-cell-phones; Amy Gahran, *ACLU: Most Police Track Phones' Locations Without Warrants*, CNN (Apr. 3, 2012), http://www.cnn.com/2012/04/03/tech/mobile/police-phone-tracking-gahran; Andy Greenberg, These Are The Prices AT&T, Verizon and Sprint Charge For Cellphone Wiretaps, Forbes, April 3, 2012, *available at* http://www.forbes. com/sites/andygreenberg/2012/04/03/these-are-the-prices-att-verizon-and-sprint-charge-for-cellphone-wiretaps/.

[31]  *See* Maine Public Law, Chapter 409 (2013), *available at* http://www.mainelegislature.org/legis/bills/bills_126th/chapters/PUBLIC40 9.asp; Montana HB 0603 (2013), *available at* http://leg.mt.gov/bills/2013/sesslaws/ch0394.pdf.

public interest has already been "satiated" by the release of information about cases in which the defendants were convicted and that the release of information about the remaining six cases would add no "*incremental value*." DOJ MSJ at 18 (quoting *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003)) (emphasis by DOJ). That is not correct.

The six cases in which the charges were dismissed or the defendants were acquitted are significantly more important, on the public interest scale, from the cases in which defendants were convicted, precisely because of the differences in their outcomes. Cases in which government overstepping — including perhaps violations of constitutional rights — resulted in the dismissal of criminal charges or the acquittal of defendants may provide citizens with far more important information about "what their government is up to," *Reporters Committee*, 489 U.S. at 773, than cases in which convictions were obtained.

Plaintiffs do not know whether the six cases at issue involved motions to suppress evidence derived from cell phone tracking, as that is one of the facts the Department refused to divulge in its declaration. But it is certainly more likely that a failed prosecution involved such a motion than that a successful prosecution did, and this Court has already recognized the

33

particularly strong public interest in learning about information from

suppression hearings:

> Information from suppression hearings in these cases could provide further insight regarding the efficacy of the technique by revealing whether courts suppress its fruits, and would disclose the standard or standards the government uses to justify warrantless tracking. Information from suppression hearings would also provide facts regarding the duration of tracking and the quality of tracking data, facts that would
>
> inform the public discussion concerning the intrusiveness of this investigative tool.

*ACLU v. DOJ*, 655 F.3d at 14, JA 51.

Likewise, Plaintiffs cannot know in advance whether the dismissals or

acquittals in these six cases were connected to the government's use of

warrantless cell phone tracking, but the odds that there was governmental

misconduct in a failed prosecution are obviously far greater than the odds

that there was governmental misconduct in a successful prosecution.[32]  Thus,

the public interest in disclosure here has hardly been "satiated."  To the

contrary, there is likely to be significant "incremental value [in] the specific

information being withheld."  *Schrecker*, 349 F.3d at 661.

---

[32]  Given that the Department generally has no compunctions about publicizing the names of unconvicted criminal defendants, *see ACLU v. DOJ*, 655 F.3d at 10 n.13, JA 47, its eagerness to continue litigating the status of these six cases may also suggest that at least some of them contain information, other than the names of the defendants, that the Department prefers not to become public.

34

While the information sought here therefore easily meets this "incremental value" criterion, it is difficult to understand what the Department believes that criterion is supposed to mean.  It is certainly not the law that an agency can disclose, say, 60% of the records responsive to a FOIA request and then shift the burden to the requester to somehow demonstrate that the other 40% will add "incremental value" to the response.  After this Court's earlier decision in this case, the Department presumably would not feel free to respond to a future FOIA request for docket information about cases resulting in convictions by releasing information for only some of the cases and withholding the rest on the ground that they would not add "incremental value."  Permitting such a practice would seriously undercut the purposes of FOIA because it would, as a practical matter, give agencies discretion to withhold the more important or embarrassing responsive records, as plaintiffs would have no way to demonstrate that the withheld records contained "incremental value."[33]

---

[33] The *Schrecker* case, cited by DOJ, appears to be the origin of the "incremental value" phrase.  But the case cited by *Schrecker* as its authority for its statement about incremental value, *King v. Dep't of Justice*, 830 F.2d 210, 234 (D.C. Cir. 1987), shows that the phrase does not mean what the Department apparently wants it to mean.  In *King*, the FOIA requester sought FBI documents concerning a civil rights activist about whose career the requester was writing a book.  The FBI released many records but redacted the names of some third parties under Exemption 7(C).  The *King*

•     •     •

Because the privacy interests of defendants in public prosecutions is minimal and the public interest in knowing what the government has done with warrantless cell phone tracking in the six specific cases that resulted in dismissals or acquittals is strong, the district court erred in denying Plaintiffs' motion for summary judgment.

court never used the phrase "incremental value" (or any similar phrase), but explained its decision to sustain the redactions as follows:

> Appellant has not attempted to demonstrate how disclosure of the identities of the specific classes of persons in issue would be of moment in preparation of her book. Indeed, she emphasizes her intention to focus the book on King's career, disavowing any "purpose to discover or write about the particular methods of surveillance that were used in Carol King's case," and addressing the FBI's investigation only to the extent "that the public be [made] aware *in general* of the consequences that defenders of unpopular causes have sometimes been made to suffer." In this posture, we decline to disturb the District Court's ultimate conclusion that the privacy interests asserted by the FBI in defense of withholding outweighed any public interest attending disclosure.

*Id.* at 234-35 (alterations in original) (footnotes omitted). Thus in *King*, the court found that release of the names at issue *would not meaningfully serve the public interest involved in the request*. If that is the proper meaning of "no incremental value," it is a sensible one — and one that has no application here, where the records at issue certainly would serve the public interest involved in the request.

36

## II.  The District Court Erred in Denying Plaintiffs' Motion for Summary Judgment Because to the Department Failed to Carry Its Evidentiary Burden

The district court also erred in denying Plaintiffs' motion for summary judgment because the Department failed "to establish [its] right to withhold information from the public [by] supply[ing] the courts with sufficient information . . . to make a reasoned determination that [the withholdings] were correct." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980).

"The government bears the burden of proving the applicability of any statutory exemption it asserts in denying a FOIA request." *Maydak v. Dep't. of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000); 5 U.S.C. § 552 (a)(4)(B) ("the burden is on the agency to sustain its action").  That burden can be met by adequate agency affidavits or declarations, but not by affidavits or declarations that "provide no basis for a judicial assessment of the [agency's] assertions," *Bevis v. Dep't of State*, 801 F.2d 1386, 1390 (D.C. Cir. 1986), because "[t]o accept an inadequately supported exemption claim 'would constitute an abandonment of the trial court's obligation under the FOIA to conduct a *de novo* review.'"  *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (quoting *Allen v. CIA*, 636 F.2d 1287, 1293 (D.C. Cir. 1980)).  *See also, e.g., Judicial Watch, Inc. v. Dep't of Homeland*

*Security*, 841 F. Supp. 2d 142, 162 (D.D.C. 2012) (an agency's motion for summary judgment must be denied where "the Court cannot meaningfully assess whether the information withheld" is properly exempt based on the agency's declaration).

The Department's declaration here provides the Court with no basis meaningfully to assess its assertion that disclosure of the six docket numbers at issue would result in an unwarranted invasion of personal privacy.  It presents essentially conclusory statements about the privacy interests of non-convicted defendants and the public interest in disclosure.  *See* Declaration of John F. Boseker ¶¶ 21-24, JA 72-74.

The *Schrecker* case, relied on by the Department, is instructive.  In the first appeal of that case, *Schrecker v. Dep't of Justice*, 254 F.3d 162 (D.C. Cir. 2001), this Court reversed a summary judgment for the Department on the ground that it had not made adequate efforts "to ascertain whether an individual was dead or alive" before asserting a 7(C) exemption regarding that person's name.  *Id*. at 167.  While the death of a named person does not automatically require disclosure of his or her name, it "is a relevant factor to be taken into account in the balancing decision whether to release information," *id*. at 166.  The Department's failure to ascertain whether the named third parties were dead or alive, and to consider that factor in

38

deciding whether to assert an exemption as to the name of any such person, left this Court "unable to say whether the Government reasonably balanced the interests in personal privacy against the public interest in release of the information at issue." *Id*. at 167.

The same is true here. The Department has failed to ascertain, or at least has failed to disclose in its declaration, important and easily ascertainable facts about the six cases at issue that should "be taken into account in the balancing decision whether to release information." Its failure to do so meant that the district court had no adequate basis for holding that the Department had properly balanced the criminal defendants' interests in personal privacy against the public interest in the release of docket information about their public prosecutions.

Plaintiffs presented the Department and the district court with seventeen specific unknown facts about each of the six cases at issue that, if considered by the Department (and by the district court and this Court on review), could weigh in favor of disclosure:

1. What crime or crimes the defendant was charged with having committed.

2. Whether the Department of Justice, a United States Attorney's Office, or any other agency of the United States government issued a press

39

release or posted a story on a website announcing the defendant's arrest and/or the filing of an indictment or information.

3.  Whether the Department of Justice, a United States Attorney's Office, or any other agency of the United States government held a press conference announcing the defendant's arrest and/or the filing of an indictment or information.

4.  Whether the defendant's arrest and/or the filing of an indictment or information was reported in the news media.

5.  Whether there were public pretrial proceedings, and whether they were reported in the news media.

6.  Whether there was a trial, and whether it was by jury or to the bench.

7.  If there was a trial, whether it was reported in the news media.

8.  Whether the Department of Justice, a United States Attorney's Office, or any other agency of the United States government issued a press release, held a press conference, or posted a story on a website regarding the termination of the case.

9.  Whether the government disclosed to the defendant, or whether the defendant otherwise learned, that he or she had been subject to cell phone tracking.

40

10.  Whether the defendant filed a motion to suppress the evidence that had been gathered by cell phone tracking, whether there was an evidentiary hearing on such a motion, and the disposition of such a motion.

11.  Whether evidence that had been gathered by cell phone tracking was offered at trial.

12.  Whether any court issued an opinion or memorandum in connection with the case.

13.  Whether any such opinion or memorandum mentioned cell phone tracking.

14.  If the charges were dismissed, whether the grounds for dismissal involved the fact that cell phone tracking had been used.

15.  Whether the defendant is currently in federal custody.

16.  Whether the defendant is currently on the nationwide list of registered sex offenders (a/k/a/ Megan's List).

17.  Whether the defendant is alive or deceased.

*See* Plaintiffs' Second Statement Regarding Material Facts, JA 78-80.  These facts are either already in the Department's files (or on its websites) or could easily be ascertained by performing a Google search on the defendant's

name, and, if necessary, contacting the Assistant United States Attorneys who handled the six cases.[34]

For example, as this Court has already noted, the Department has issued *thousands* of press releases in the past ten years publicizing indictments. *ACLU v. DOJ*, 655 F.3d at 10 n.13, JA 47.  If a press release was issued in one or more of the six cases at issue, that surely would be "a relevant factor to be taken into account in the balancing decision whether to release information."[35]  And if news of the defendant's indictment had been picked up and reported in the media — especially by newspapers or television stations in the defendant's home town or by specialized media in the defendant's social or professional world — that would also be a relevant factor:  if a defendant's indictment is already notorious, there will be no *unwarranted* invasion of his or her privacy in providing the docket number

---

[34]  The Assistant United States Attorneys who handled these cases were previously contacted in preparing the Department's response to Plaintiffs' FOIA request, so their identities and contact information are already known. *See* United States Dep't of Justice's Second Statement of Material Facts ¶ 3, JA 60-61.

[35]  Two of the six cases at issue come from the Southern District of Florida. *See* Declaration of John F. Boseker ¶ 17, JA 71.  Plaintiffs do not know in what month(s) the defendants were indicted, but in May 2013, the United States Attorney's Office for the Southern District of Florida issued press releases reporting 69 arrests and indictments. *See News and Press Releases*, U.S. Attorney's Office for the Southern District of Florida, http://www.justice.gov/usao/fls/news.html#may2013 (last visited Aug. 27, 2013). This certainly suggests that the possibility that there were press releases in one or more of the cases at issue is not remote.

of his case to Plaintiffs.  Similarly, news coverage of a defendant's trial

would be a highly relevant factor, and likely to be found easily with a

Google News search on the defendant's name, which is known only by the

Department.

     The role of warrantless cell phone tracking in a defendant's case is

also a highly relevant factor, as it may tend to increase the weight of the

public interest in disclosure.  For example, the Department knows, or can

easily ascertain, whether a defendant filed a motion to suppress the evidence

that had been gathered by cell phone tracking, whether there was an

evidentiary hearing on such a motion, and the disposition of such a motion.

The Department knows, or can easily ascertain, whether evidence that had

been gathered by cell phone tracking was offered at trial, whether any court

issued an opinion or memorandum in connection with the case, whether any

such opinion or memorandum mentioned cell phone tracking, and, in the

four cases in which the charges were dismissed, whether the grounds for

dismissal involved the fact that cell phone tracking had been used.  All of

these facts would be quite relevant to the public interest (or to the

"incremental value") of disclosure in these cases.

     The Department also knows, or can easily ascertain, whether the

defendants in one or more of these six cases is currently in federal custody

43

on another conviction, or is currently on the nationwide list of registered sex offenders ("Megan's List").  Such facts would be relevant to the privacy side of the balance, as, for example, a defendant whose name is — by federal decree — posted on the Internet as a convicted criminal probably has relatively little to suffer by disclosure of the fact that he was acquitted or had charges against him dismissed in some other prosecution.

Plaintiffs sought this information, and noted its absence in their opposition to the Department's motion for summary judgment.  The Department nevertheless declined to provide it.  And the district court never considered these factors, and the absence of any information about them from the record, in granting summary judgment for the Department

For these reasons, the Department did not carry its burden of showing that it had reasonably balanced the relevant factors under Exemption 7(C).  Plaintiffs were therefore entitled to summary judgment.  *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980) (affirming summary judgment for FOIA plaintiff where "agency has failed to supply us with even the minimal information necessary to make a determination"); *Public Citizen, Inc. v. Office of Management and Budget*, 569 F.3d 434, 444 (D.C. Cir. 2009) (ordering disclosure where agency "failed to meet its burden of demonstrating that Exemption 5 covers the documents in their

entirety"); *Lopez v. Dep't of Justice*, 393 F.3d 1345, 1351 (D.C. Cir. 2005)

(ordering disclosure "because the Government has failed to prove an

exemption should be given in the circumstances of this case").

## CONCLUSION

For the reasons stated above, the judgment of the district court should

be reversed and the case remanded with instructions to enter summary

judgment for Plaintiffs and order disclosure of the docket information about

the six cases at issue.

Respectfully submitted,

*Arthur B. Spitzer*
Arthur B. Spitzer
American Civil Liberties Union
  of the Nation's Capital
4301 Connecticut Ave, N.W., Suite 434
Washington, DC 20008
Tel. (202) 457-0800
Fax (202) 457-0805
artspitzer@aclu-nca.org

Catherine Crump
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2500
Fax (212) 549-2583
ccrump@aclu.org

David L. Sobel
Electronic Frontier Foundation
1818 N Street, N.W., Suite 410
Washington, DC 20036
Tel. (415) 436-9333 ext. 202
Fax (415) 436-9993
sobel@eff.org

*Counsel for Plaintiffs-Appellants*

September 4, 2013

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B) because it contains 10,080 words (as counted by

Microsoft Word for Mac 2011 version 14.3.6), excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because it has been prepared in a proportionally spaced typeface using

Microsoft Word in 14-point Times New Roman.

*Arthur B. Spitzer*
Arthur B. Spitzer
*Counsel for Appellants*

September 4, 2013


## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing BRIEF FOR

APPELLANTS and the JOINT APPENDIX in this appeal upon counsel for

defendant-appellee via this Court's electronic filing system, this 4th day of

September, 2013.

*Catherine Crump*
Catherine Crump
*Counsel for Appellants*
